IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OMAR MORALES, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 10-CV-169-GKF-TLW |
| JUSTIN JONES, Director; et al., | ) |
|       Defendants. | ) |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action commenced on December 15, 2009, by Plaintiff, a prisoner appearing *pro se*. Plaintiff filed his complaint (Dkt. # 1) and a motion to proceed *in forma pauperis* (Dkt. # 2), in the United States District Court for the Western District of Oklahoma. That Court granted Plaintiff's motion to proceed *in forma pauperis*, see Dkt. # 5. On February 19, 2010, after Plaintiff filed an amended complaint (Dkt. # 11),[1] the United States Magistrate Judge entered a supplement (Dkt. # 14) to the initial Report and Recommendation, recommending that Defendant Jones be dismissed and the remainder of the case be transferred. Plaintiff filed an objection (Dkt. # 15). By Order filed March 18, 2010 (Dkt. # 16), the recommendations contained in the supplemental Report were adopted and the case was transferred to this district court. See Dkt. # 16.

---

[1] In the amended complaint, Plaintiff names the following defendants: Justin Jones, Director; Walter N. Dinwiddie, Warden; Curtis Hood, Chief of Security; Tom Dyer, Case Manager; Larry D. Stewart, District Attorney for Osage County; and Randy Knight, Investigator. He abandoned his claims against any defendant named in the original complaint and omitted from the amended complaint. Those defendants are Martin Molles (Inmate #371859), Marcial Badillo (Inmate #496054), John Doe (ADA, Osage County), and John Doe (Investigator for DA, Osage County).

In response to the amended complaint, Defendants Walter Dinwiddie, Tom Dyer, Curtis Hood, Justin Jones,[2] Randy Knight, and Larry D. Stuart filed a motion for summary judgment (Dkt. # 39). Plaintiff filed a response to the motion for summary judgment (Dkt. # 44). Defendants also filed a Special Report (Dkt. # 40). In addition, Plaintiff filed a motion for appointment of counsel (Dkt. # 43). For the reasons set forth below, the Court finds that Defendants' motion for summary judgment shall be granted. Plaintiff's motion for appointment of counsel shall be declared moot.

## *BACKGROUND*

On August 10, 2007, inmate John Pierce was stabbed to death by members of the Indian Brotherhood ("IBH") gang at Dick Conner Correctional Center ("DCCC"). On or about August 21, 2007, thirty-five inmates, including Plaintiff, who had been housed in cells in the general area of the murder, were interviewed by Randy Knight, an investigator for the Oklahoma Department of Corrections ("ODOC"). The unit was on lock down during the interviews. One of the inmates, Charles Moore, was given a protective custody transfer on August 20, 2007, prior to any of the interviews. Approximately eight (8) months later, on April 14, 2008, Plaintiff met briefly with Dale Anderson, an investigator for the Oklahoma Indigent Defense System ("OIDS"). When he learned that Mr. Anderson represented one of the four inmates accused of murdering John Pierce, Plaintiff refused to talk to him and terminated the interview. One week after his meeting with the OIDS investigator, on April 21, 2008, Plaintiff was attacked and stabbed by two other DCCC inmates. He was taken via a life flight helicopter to St. Francis Hospital in Tulsa, Oklahoma, where he received

---

[2] Defendant Justin Jones was dismissed from this action by the United States District Court for the Western District of Oklahoma prior to entry of the Order transferring the case to this Court. See Dkt. # 16.

treatment for his wounds. He was subsequently transferred to Lindsay Hospital. On April 30, 2008, upon release from the hospital, Plaintiff was reassigned to Lexington Correctional Center ("LCC") where he now resides.

Based on those events, Plaintiff identifies two (2) claims in his amended complaint, as follows:

> Count 1: Through deliberate indifference defendants failed to protect Plaintiff from other inmates with full knowledge that he would be assaulted.
>
> Count 2: Defendants, in a conspiracy, used excessive force against Plaintiff.

(Dkt. # 11). Plaintiff seeks monetary damages. On September 14, 2010, Defendants moved for summary judgment on the grounds that (1) Defendants Jones, Dinwiddie, and Stuart are not liable to Plaintiff due to lack of personal participation, (2) Plaintiff's conclusory statements are insufficient to state a claim for violation of the Eighth Amendment, (3) Plaintiff's Eighth Amendment rights were not violated by the Defendants, (4) Plaintiff failed to exhaust his administrative remedies regarding his claims for violation of his rights, and (5) Plaintiff's complaint of negligent supervision must be dismissed due to lack of jurisdiction pursuant to governmental immunity provided by Okla. Stat. tit. 51, § 155(6) & (24) of the Oklahoma Governmental Tort Claims Act. See Dkt. # 39. Plaintiff filed a response to Defendants' motion. Dkt. # 44. For the reasons set forth below, the Court finds Defendants are entitled to summary judgment on their claim that Plaintiff failed to exhaust administrative remedies prior to filing his complaint.

## *ANALYSIS*

### A. Summary judgment standard

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp.

3

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**B. Exhaustion of administrative remedies**

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision applies "to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Woodford v. Ngo, 548 U.S. 81 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001). The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. See Beaudry v. Corr. Corp. of America, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). There is no futility exception to § 1997e(a)'s exhaustion requirement. Booth, 532 U.S. at 741 n. 6 ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). The PLRA requires exhaustion of available administrative remedies "before suing over prison conditions." Booth, 532 U.S. at 733. To satisfy the exhaustion requirement, an inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of is proceedings." Ngo, 548 U.S. at 90-91.

The Supreme Court has held that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). "[T]he failure to exhaust is an affirmative defense under the PLRA." Id. "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000). "Congress intended to save courts from spending countless hours, educating themselves in every case, as to the vagaries of prison administrative processes, state or federal" and "did not intend for courts to expend scarce

5

judicial resources examining how and by whom a prison's grievance procedure was implemented." Concepcion v. Morton, 306 F.3d 1347, 1354 (3d Cir. 2002) (quotation omitted).

Defendants allege that they are entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies prior to filing his civil rights complaint. The Court agrees. The evidence, viewed in the light most favorable to Plaintiff, fails to show the existence of a genuine issue of material fact as to whether Plaintiff satisfied the exhaustion requirement of the PLRA prior to filing his complaint. He did not. The ODOC grievance procedure, see Dkt. # 40, Ex. 17 ("Inmate/Offender Grievance Process" (OP-090124)), in effect at the time of the incidents giving rise to Plaintiff's claims, calls for submission of a request to staff ("RTS") within 7 calendar days of the alleged incident to be timely. (OP-090124(IV)(B)(2)). If there has been no response to the RTS after 30 calendar days of its submission, the inmate may file a grievance to the reviewing authority regarding the lack of a response. (OP-090124(IV)(B)(7)). Next, a grievance must be submitted within 15 calendar days of the incident or the date of the response to the RTS, whichever is later. (OP-090124(V)(A)(1)). The reviewing authority may extend the period for submission of a grievance for up to 60 days for good cause. (OP-090124(V)(A)(2)). There is also a procedure for submitting a grievance out of time. (OP-090124(XII)). Upon receipt of a grievance, the reviewing authority is required to respond within 15 working days. (OP-090124(V)(C)(1)). If dissatisfied with the response by the reviewing authority, the inmate must then appeal to the administrative review authority within 15 calendar days of receipt of the reviewing authority's response. (OP-090124(VII)(B)). The ruling of the administrative review authority is final and concludes the internal administrative remedy available to the inmate/offender within ODOC's jurisdiction. (OP-090124(VII)(D)).

Plaintiff's claims in this case fall squarely within the PLRA's exhaustion requirement because Plaintiff was "confined in any jail, prison, or other correctional facility" when his claims arose. Cf. Robbins v. Chronister, 402 F.3d 1047, 1054 (10th Cir. 2005) ("Constitutional claims arising *before* the events causing the plaintiff's incarceration are unrelated to prison confinement."). In support of their motion for summary judgment, Defendants present evidence indicating that Plaintiff failed to exhaust available administrative remedies in accordance with ODOC's grievance policy prior to filing his complaint. That policy, as discussed above, provides that a claim has not been exhausted until the prisoner properly and timely files an appeal to the administrative review authority and that authority issues a response to the appeal. The record presented by Defendants reflects that in September and November 2009, or more than a year after he was stabbed, Plaintiff submitted two RTS and a grievance concerning the prison officials' failure to place him in protective custody. See Dkt. # 40, Ex. 2. In response to the grievance, the reviewing authority granted relief and wrote "I have directed the Chief of Security to answer your Request to Staff by December 18, 2009 and forward a copy to this office." Id. at page 4 of 4. Curtis Hood, the Chief of Security at DCCC, prepared a Memorandum in response to the RTS, advising Plaintiff that he had no idea Plaintiff was in danger and assuring Plaintiff that "none of us in the department would sit back and let an individual be in harms way if we had prior knowledge." See Dkt. # 40, Ex. 8. Plaintiff took no action to appeal the resolution of his grievance. In addition, in November 2009, Plaintiff submitted a RTS asking Defendant Dyer why he told the inmates who stabbed him that he was a snitch and a child abuser. See Dkt. # 40, Ex. 3. After Defendant Dyer responded, Plaintiff filed a grievance. Id. In response to that grievance, the reviewing authority denied relief. Id. at page 3 of 3. Again, nothing in the record suggests that Plaintiff appealed the resolution of this grievance to

7

the administrative review authority. As a result, Plaintiff did not complete the administrative appeal process as to either of the grievances contained in the record provided by Defendants.

In response to Defendants' motion for summary judgment, Plaintiff provides a RTS, dated April 16, 2008, or only five (5) days before he was stabbed, addressed to Defendant Dyer, his case manager, expressing concern for his safety and requesting that he be placed in protective custody. See Dkt. # 44, Ex. A.[3] There is no response on the RTS and Plaintiff alleges he never received a response to this RTS. He claims that he never filed a grievance because "[n]o grievances are available if a Request to Staff is not answered." (Dkt. # 44 at 8). Plaintiff further alleges that since he was in the hospital for nine days after being stabbed he had no access to the proper forms and could not proceed with exhausting administrative remedies within the time constraints imposed by OP-090124.

The Court disagrees with Plaintiff's interpretation of OP-090124. He in fact had a remedy if his RTS was not answered. See OP-090124(IV)(B)(7), discussed above. In addition, while the Court sympathizes with Plaintiff's inability to comply with the strict time requirements of OP-090124 due to his hospitalization and subsequent period of convalescence, he nonetheless had an administrative remedy. Under OP-090124(V)(A)(2), he could have requested, upon a showing of

---

[3] The Request to Staff presented by Plaintiff is not part of the summary judgment record provided by Defendants. As part of the Special Report prepared in this case, Defendant Dyer provides his affidavit, see Dkt. # 40, Ex. 5, stating that "[f]ollowing the meeting [with OIDS Investigator Anderson], the plaintiff did not tell me that he didn't feel safe or that the IBH would believe that he was testifying against gang members. The plaintiff did not tell me that he wanted protective custody. I do not recall having ever received any written request from the plaintiff, asking for protection before, during or after the April 14, 2008 interview with the [OIDS] Investigator." Id. at ¶ 6. Defendants did not file a reply to Plaintiff's response. As a result, Defendants have not explained why the RTS presented by Plaintiff was not part of their Special Report.

8

good cause, an extension of an additional 60 days for submission of a grievance. Furthermore, under OP-090124(XII), he could have requested that he be allowed to submit a grievance out of time. Plaintiff failed to follow those administrative procedures that were available to him.

As part of his response, Plaintiff also provides a RTS addressed to the Procedures Officer at Lexington Assessment and Reception Center ("LARC"), dated September 27, 2009, requesting information regarding policies governing delivery of an inmate witness during an investigation and governing transfer of an inmate witness whose life is in danger. See Dkt. # 44, Ex. B1. In addition, he provides the Administrative Review Authority response from Debbie L. Morton, Director's Designee, dated March 15, 2010, returning his grievance unanswered and a cover letter dated January 27, 2010, enclosing a document relevant to grievance number DCCC 10-004. Id. Exs. B2 and B3. The records provided by Plaintiff as Exhibit B were not part of the summary judgment record provided by Defendants. Plaintiff did not provide a copy of the grievance giving rise to his appeal to the Administrative Review Authority. As a result, it is unclear whether the subject of the RTS provided as Exhibit B1 was also the subject of the administrative appeal provided as Exhibit B2. Significantly, the documents provided by Plaintiff as Exhibits B1-3 do not reference the specific event giving rise to the claims raised in this case. Furthermore, it is clear that the administrative appeal concluded on March 15, 2010, or almost three (3) months after Plaintiff commenced this federal civil rights action. As discussed above, a plaintiff is required to exhaust administrative remedies before filing a civil rights lawsuit in federal court. 42 U.S.C. § 1997e(a); Booth, 532 U.S. at 733. Therefore, the Exhibit B1-3 documents do not convince the Court that Plaintiff exhausted available administrative remedies before filing this action.

Upon review of the summary judgment record, the Court finds Plaintiff failed to exhaust available administrative remedies before filing this action. If Plaintiff was unable to comply with the timing requirements imposed under OP-090124 due to the seriousness of his injuries, he could have sought a 60 day extension for submission of a grievance as provided by OP-090124(V)(A)(2). He also could have requested that he be allowed to submit a grievance out of time under OP-090124(XII). In addition, when he did file grievances, he failed to appeal to the administrative review authority as required by OP-090124(VII).

In conclusion, the Court finds that there is no genuine issue of material fact as to whether Plaintiff exhausted administrative remedies before filing this civil rights action. Because he failed to exhaust administrative remedies provided by ODOC, Defendants' motion for summary judgment shall be granted.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Dkt. # 39) is **granted**.
2. Plaintiff's motion for appointment of counsel (Dkt. # 43) is **declared moot**.
3. Plaintiff's complaint (Dkt. # 1), as amended (Dkt. # 11), is **dismissed without prejudice** for failure to exhaust administrative remedies.
4. A separate judgment in favor of Defendants shall be entered in this matter.

DATED THIS 21st day of September, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma